IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**AL OTRO LADO**
P.O. Box 907
Maywood, CA 90270

*Plaintiff*

v.

**U.S. CUSTOMS AND BORDER PROTECTION**
1300 Pennsylvania Avenue NW,
Washington, DC 20004

*Defendant*

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff Al Otro Lado ("AOL") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.,* seeking injunctive and declaratory relief to compel the United States Customs and Border Protection ("CBP") to issue determinations on AOL's FOIA request.

2. In recent years, the U.S. Department of Homeland Security ("DHS") has implemented vast surveillance and data sharing programs that gather, store, and share massive amounts of data about migrants and travelers alike.[1] Civil society groups have raised a multitude of privacy, security, and legal concerns about these programs.

3. For example, the ACLU National Security Project has raised concerns that CBP's policy

---

[1] Hearing Before the Committee on Homeland Security, House of Representatives, 115th Congress Second Session No. 115-63(Apr. 26, 2018), https://www.govinfo.gov/content/pkg/CHRG-115hhrg30901/html/CHRG-115hhrg30901.htm; Arelis R. Hernández, *Immigration officials partner with Panama to boost screening of migrants passing through to U.S.*, Washington Post (Aug. 27, 2019), https://www.washingtonpost.com/immigration/immigration-officials-partner-with-panama-to-boost-screening-of-migrants-passing-through-to-us/2019/08/26/532f6150-c81d-11e9-a4f3-c081a126de70_story.html.

1

of requiring asylum seekers to download its CBP One application to their phones may subject them to persistent surveillance.[2] The government itself found in a 2019 study that facial recognition technology is especially unreliable for border-crossing photos and for images of those from Africa or the Caribbean. CBP's ability to safeguard the data it collects from CBP One is also in doubt given a 2018 hack of CBP's database that left more than 180,000 photos compromised.

4. Likewise, the Electronic Frontier Foundation, a digital privacy group, has called Operation Double Helix, a DHS program in which the agency forces migrants to give their DNA, "dystopian."[3]

5. DHS' Biometric Identification Transnational Migration Alert Program, a program in which DHS shares the biometric data it collects with thirteen other countries, also raises concerns that the United States is pressuring foreign governments to stop migration so as to skirt its statutory and international treaty obligations to provide processes for asylum seekers to present their claims.[4]

6. On September 24, 2021, AOL submitted a FOIA request to CBP seeking release of records regarding these and other DHS surveillance, data collection, and data sharing programs.

7. The government has used its Title 42 public health expulsion protocol, the Migrant Protection Protocols, and other border programs, to effectively close the border to those seeking asylum in the United States.[5] Meanwhile, CBP has also limited its issuance of humanitarian parole, another tool

---

[2] Molly O'Toole, *Exclusive: Biden has quietly deployed an app for asylum seekers. Privacy experts are worried*, Washington Post (Jun. 6, 2021), https://www.yahoo.com/now/exclusive-biden-quietly-deployed-app-190234787.html.

[3] Nicole Narea, *The US is expanding its collection of DNA from immigrant detainees for a federal criminal database*, Vox (Mar. 6, 2020), https://www.vox.com/policy-and-politics/2019/10/3/20895459/dna-test-immigrant-detention-criminal-database.

[4] Caitlyn Yates, *A Case Study in the Outsourcing of U.S. Border Control*, Lawfare (Apr. 11, 2019), https://www.lawfareblog.com/case-study-outsourcing-us-border-control.

[5] Human Rights First, *"Illegal and Inhumane": Biden Administration Continues Embrace of Trump Title 42 Policy as Attacks on People Seeking Refuge Mount* (Oct. 4, 2021), https://www.humanrightsfirst.org/sites/default/files/IllegalandInhumane.pdf.

it has traditionally used to allow those facing exigent circumstances to enter the country, further limiting the ability for individuals and families to seek refuge in the United States.

8. On November 9, 2021, AOL submitted a FOIA request to CBP seeking the release of records regarding CBP's use of its humanitarian parole powers along the U.S. southern border.

9. To date, CBP has yet to issue determinations for any of those requests. As such, CBP has violated FOIA by failing to issue determinations within the statutorily-allowed time.

**PARTIES**

10. Plaintiff Al Otro Lado is a non-profit, non-partisan organization based primarily in Los Angeles, California. AOL is a legal services organization serving indigent deportees, migrants, refugees, and their families. Al Otro Lado's mission is to coordinate and to provide screening, advocacy and legal representation for individuals in immigration proceedings and detained by DHS, to seek redress for civil rights violations, and to provide assistance with other legal and social service needs. Al Otro Lado regularly provides information and analysis to the media, the general public, and human rights monitoring bodies and disseminates information about its work and conditions on the U.S.-Mexico border and in immigration detention through its various social media accounts and website.[6] Disseminating information to the public is a critical component of Al Otro Lado's work. Al Otro Lado does this at no cost to the public.

11. Defendant CBP is a component of the U.S. Department of Homeland Security ("DHS") and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP has possession of and control over the records requested by AOL.

---

[6] *See* Al Otro Lado, Twitter, https://twitter.com/AlOtroLado_Org; Al Otro Lado, Instagram, https://www.instagram.com/alotrolado_org; Al Otro Lado, Facebook, https://www.facebook.com/AlOtroLadoOrg/; Al Otro Lado, https://alotrolado.org/.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

13. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B).

14. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), CBP has constructively denied AOL's Requests because they have not issued determinations as to either request here.

**STATUTORY FRAMEWORK**

15. Any member of the public may request records from an agency of the United States under FOIA. An agency that receives a FOIA request must issue a determination in writing to the requester within 20 business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). In its determination, the agency must: inform the AOL as to whether it intends to comply with the request; provide reasons for its determination; and inform the requester of his or her right to appeal the determination. *Id.* FOIA provides for an extension of this deadline "[i]n unusual circumstances" but limits this extension to "ten working days." 5 U.S.C. § 552(a)(6)(B)(i).

16. A "determination" demands "more than mere acknowledging receipt of the Request and stating the agency will produce any non-exempt records that it may later locate." *Electronic Privacy Information Center v. Department of Justice*, 15 F.Supp.3d 32, 40 (D.D.C. 2014). Rather, "in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 188 (D.C. Cir.

4

2013) ("*CREW*").

17. FOIA requires an agency to disclose in a timely manner, in response to a FOIA request, all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. § 552 (a)(3)(A); 5 U.S.C. § 552(b)(1)-(9). FOIA also requires an agency to make a reasonable search for responsive records. 5 U.S.C. § 552(a)(3)(C).

## STATEMENT OF FACTS

18. On September 24, 2021, AOL submitted a FOIA request to CBP seeking the following:

1. All memoranda of understanding or other agreements, including all modifications regarding the CBP One™ Mobile Application.

2. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees, regarding the CBP One™ Mobile Application.

3. All communications containing the term "CBP One" that any Commissioner or Acting Commissioner of U.S. Customs and Border Protection ("CBP") sent, received, was cc-d on , or bcc-d on in between January 1, 2018 and the present.

4. All records relied upon or used to prepare DHS/CBP/PIA-068 CBP One™ Mobile Application.

5. All memoranda of understanding or other agreements, including all modifications regarding CBP's Operation Double Helix. Information on Operation Double Helix can be found in the following CBP press release: https://www.cbp.gov/newsroom/national-media-release/cbp-meet-legal-requirement-colle ct-dna-samples-certain-populations

6. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and and other DHS component employees, on Operation Double Helix.

7. All communications containing the term "double helix" that any Commissioner or Acting Commissioner of CBP sent, received, was cc-d on, or bcc-d on in between January 1, 2018 and the present.

8. All memoranda of understanding or other agreements, including all modifications regarding BI Incorporated's SmartLINK app.

5

9. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees, regarding the SmartLINK app.

10. All communications containing the term "Smartlink" that any Commissioner or Acting Commissioner of CBP or Director or Acting Director of ICE sent, received, was cc-d on, or bcc-d on in between January 1, 2018 and the present.

11. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees, on DHS's U.S. Maritime Migrant Interdiction Operations and either Cuba or Haiti dated between May 1, 2021 and the present. Information on the Maritime Migrant Interdiction Operations can be found here: https://www.dhs.gov/news/2021/07/13/secretary-mayorkas-overviews-us-maritime-migra nt-interdiction-operations

12. All communications containing the term "Maritime Migrant Interdiction Operations" or "MMIO" and either "Cuba" or "Haiti" and that Alejandro Mayorkas sent, received, was cc-d on, or bcc-d on in between May 1, 2021 and the present.

13. All memoranda of understanding or other agreements, including all modifications regarding all Biometric Data Sharing Program ("BDSP") Arrangements signed or otherwise put into effect between January 1, 2011 and the present. Information on BDSP Arrangements can be found in the following DHS press release: https://www.dhs.gov/sites/default/files/publications/fact_sheet_on_agreements_10-28-19.pdf

14. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees, on the BDSP.

15. All communications containing the term "BDSP" or "Biometric Data Sharing Program" that any Commissioner or Acting Commissioner of CBP sent, received, was cc-d on, or bcc-d on in between January 1, 2018 and the present.

16. All memoranda of understanding or other agreements, including all modifications regarding all Biometric Identification Transnational Migration Alert Program ("BITMAP") agreements signed or otherwise put into effect between January 1, 2011 and the present. Information on BDSP Arrangements can be found in the following DHS press release: https://www.ice.gov/investigations/terrorism-national-security-threats#bitmap

17. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees, on the BITMAP.

18. All communications containing the term "Biometric Identification Transnational Migration Alert Program" or "BITMAP" that any Commissioner or Acting Commissioner of CBP sent, received, was cc-d on, or bcc-d on in between January 1, 2018 and the present.

19. The March 2020 Memorandum of Understanding between U.S. Customs and Border Protection ("CBP") and United States Agency for International Development ("USAID") discussed in the following press release: https://www.cbp.gov/newsroom/national-media-release/cbp-signs-memorandum-understa nding-usaid

20. All policy directives, guidance documents, memoranda, training materials, or similar records guiding CBP and other DHS Component employees concerning the March 2020 Memorandum of Understanding between CBP and USAID

21. All communications containing the term "USAID" that any Commissioner or Acting Commissioner of CBP sent, received, was cc-d on, or bcc-d on in between January 1, 2018 and the present.

19. CBP assigned this request tracking number CBP-2021-109650 on September 27, 2021.

20. On November 9, 2021, AOL submitted a FOIA request to CBP seeking the following:

1. All policies and/or formal or informal guidance related to the processing of requests for humanitarian parole at US ports-of-entry, from 2015 through the present, including:
    a. Criteria and/or other guidance used to inform discretionary decisions
    b. Policies and/or protocol relating to the timeframe for responding to requests for humanitarian parole
    c. Policies, procedures, and/or guidance on tracking, monitoring, and documenting data and information received from humanitarian parole requests
    d. Policies, procedures, and/or guidance for determining humanitarian parole requests for family members, caretakers, and relatives of primary recipients of humanitarian parole
    e. Training materials for CBP officers relating to humanitarian parole requests
    f. Memoranda and/or other notices of policy changes and/or updates to the criteria and/or procedures for determining requests for humanitarian parole
    g. Policies, procedures, and/or guidance relating to the parole to accompanying family members, relatives, and caretakers of the primary applicant for humanitarian parole

2. All communications, including but not limited to emails, text messages, letters, fax, memoranda, and meeting notes, sent or received by CBP from 2015 through the present, mentioning or relating to:
    a. Humanitarian parole requests at US ports-of-entry
    b. Procedures for evaluating a humanitarian parole request at a port-of-entry
    c. Acceptance and/or denial rates of humanitarian parole requests at ports-of-entry
    d. Evidence required for humanitarian parole requests
    e. Communication with requestors of humanitarian parole

3. All communications, including but not limited to emails, text messages, letters, fax, memoranda, and meeting notes, sent or received by CBP from 2015 through the present, mentioning or relating to:
    a. Changes in policy or procedure in adjudicating humanitarian parole requests at US ports-of-entry
    b. Changes in eligibility for humanitarian parole at US ports-of-entry
    c. Changes in policies or procedures for communicating with requestors of humanitarian parole

4. Statistics reflecting the total number of requests for humanitarian parole received by CBP at each port of entry and/or Border Patrol sector along the US-Mexican border, from January 2015 through the present

5. Statistics reflecting the aggregate breakdown of dispositions of the humanitarian parole requests at each port of entry described in request (4), from 2015 through the present, including:
    a. The number of requests for humanitarian parole that were approved
    b. The number of requests for humanitarian parole that were denied
    c. The number of requests for humanitarian parole that are pending

6. Statistics reflecting the aggregate demographic breakdown of the humanitarian parole requests at each port of entry that were approved, denied, or are still pending, as described in request (4), from 2015 through the present, including:
    a. Nationality
    b. Age
    c. Gender
    d. Race

7. Statistics reflecting the aggregate breakdown of requests for humanitarian parole, as described in request (4), from 2015 through the present, that were approved or denied on the basis of or due in part to:
    a. Applicant's urgent health and/or medical conditions
    b. Persecution on the basis of applicant's LGBTQ+ identity
    c. Applicant's history and/or fear of sexual violence in Mexico

    d. Applicant's history and/or fear of kidnapping, extortion, detention, imprisonment, and/or human trafficking in Mexico
    e. Applicant's history and/or fear of beatings, physical violence, and/or murder in Mexico

21. On November 10, 2021, CBP assigned tracking number CBP-2022-013430 to this request.

22. As of the filing of this Complaint, CBP has not issued any determination or produced any records regarding any of the above requests as required by FOIA.

## COUNT ONE

### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Issue Timely Determinations

23. AOL realleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

24. AOL properly requested records within the possession, custody, and control of Defendant.

25. Defendant is an agency subject to FOIA and therefore must make reasonable efforts to search for requested records and to promptly make the requested records available. 5 U.S.C. § 552(a)(3)(C).

26. Defendant violated FOIA, 5 U.S.C. § 552(a)(6)(A) by failing to issue timely determinations in response to AOL's requests. Defendant is obligated under 5 U.S.C. § 552(a)(6)(A)(i) to make a determination regarding the Request within twenty business days or thirty business days if an extension is invoked.

27. Defendant has not issued any determination as to AOL's Requests though they have remained pending for 153 and 122 business days respectively .

28. When an agency fails to make a determination within the statutory deadline, requesters are entitled to "immediate judicial supervision" of their requests. *Daily Caller v. U.S. Dep't of State*, 152 F.Supp.3d 1, 10 (D.D.C. 2015). "[T]he district court's supervision will aim to ensure that the agency is processing a request with 'due diligence' *and* as quickly 'as practicable.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F.Supp.3d 293, 302 (D.D.C 2017) (quoting 5 U.S.C. § 552(a)(6)(E)(iii)). Accordingly, AOL is entitled to judicial supervision in this case.

## COUNT TWO

### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Conduct an Adequate Search for Responsive Records

29. AOL realleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

30. AOL properly requested records within the possession, custody, and control of Defendant.

31. Defendant is an agency subject to FOIA and therefore must make reasonable efforts to search for requested records and to promptly make the requested records available. 5 U.S.C. § 552(a)(3)(C).

32. Defendant's failure to conduct an adequate search for responsive records violates FOIA.

## COUNT THREE

### Violation of FOIA, 5 U.S.C. § 552
### for Improper Withholding of Non-Exempt Responsive Records

33. AOL realleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

34. AOL properly requested records within the possession, custody, and control of

Defendant.

35. Defendant is an agency subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide a lawful reason for withholding any records. 5 U.S.C. §§ 552(a)(3)(A), (a)(8)(A).

36. Defendant's failure to provide all non-exempt responsive records violates FOIA.

## PRAYER FOR RELIEF

For these reasons, AOL asks that the Court grant the following relief:

A. Declare that Defendant has failed to timely respond to Plaintiff's requests for agency records in violation of FOIA;

B. Order Defendant to conduct a reasonable search for records responsive to Plaintiff's FOIA requests;

C. Order Defendant to produce, within twenty days of the Court's order, or by a date deemed appropriate by the Court, non-exempt records responsive to Plaintiff's FOIA requests and indexes justifying the withholding of responsive records pursuant to FOIA exemptions

D. Enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests;

E. Award Plaintiff reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

F. Award all other and further relief the Court deems just and proper.

Dated: May 11, 2022            Respectfully submitted,

                                       /s/ Sejal Zota
                               Sejal Zota (DC Bar No. NC020)
                               Just Futures Law
                               95 Washington Street, Suite 104-149
                               Canton, MA 02021

Telephone: (919) 698-5015
sejal@justfutureslaw.org

Jeremy Jong (NJ Bar Number 066472014)*
AL OTRO LADO
3527 Banks St.
New Orleans, LA 70110
Telephone: (504) 475-6728
Facsimile: (323) 430-8793
jeremy@alotrolado.org

Attorneys for Plaintiff Al Otro Lado

* *pro hac vice* motion forthcoming