UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL OTRO LADO,<br><br>            Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>            Defendant. | Civil Action No. 22-1280 (CKK) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE PLEADINGS**

Defendant, the U.S. Customs and Border Protection ("Defendant") respectfully opposes Plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)").  Mot. on the Pleadings, ECF No. 22-1 (arguing solely that it is entitled to partial judgment on the pleadings because Defendant has failed to provide a "determination" regarding its Freedom of Information Act ("FOIA") request within 20 days).  However, while the FOIA statute requires that, within the relevant time period, an agency must determine whether to comply with a request—that is, whether a requester will receive all the documents the requester seeks— that statute does not create an entitlement to immediate processing and production.  As a result, Plaintiff is not entitled to judgment on the pleadings and Plaintiff's motion should be denied.

**BACKGROUND**

This litigation relates to two separate FOIA requests.  *See* the Declaration of Patrick Howard ("Howard Decl.") ¶ 28.  One request was assigned tracking number CBP-2022-013430 ("humanitarian parole request") sought certain records broadly regarding the use of humanitarian parole by CBP.  *Id*. ¶ 29.  For the humanitarian parole request, the parties successfully agreed on

a scoping recommendation on August 21, 2023, which significantly reduced the burden in processing this request, and CBP began its search. *Id*. ¶ 30. CBP has processed 584 pages of documents and 8 lengthy spreadsheets for this request. *Id*.

The second request assigned tracking number CBP-2021-109650 ("biometric data collection and data sharing programs request"), seeks records broadly regarding biometric data collection and data sharing programs, and consists of twenty-one (21) separate subparts. *Id*. ¶ 31. Even among the universe of complex requests, this request is uniquely complex in scope, depth, and type of records sought. *Id*. ¶ 32. The request seeks records regarding seven vastly different, and unrelated, programs or policies. *Id.* One particularly burdensome aspect of the request seeks all communications any Commissioner or Acting Commissioner of CBP sent, received, was cc-d on, or bcc-d on from January 1, 2018 to the present regarding six (6) of these programs or policies, and all electronic records the Secretary of the Department of Homeland Security (DHS) sent, received, was cc-d on, or bcc-d on regarding the remaining one (1) program or policy. *Id*. Plaintiff seeks records, including these communications, related to programs of other agencies, and associated policies, for which CBP may have little to no involvement, but nonetheless may have copies of documents regarding the programs. *Id*.

For the biometric data collection and data sharing programs request, on September 15, 2023, CBP approached Plaintiff in good faith with proposed scoping language to allow for more effective and efficient processing. *Id*. ¶ 33. CBP indicated in its scoping recommendation that many of the items in Plaintiff's request sought records related to programs of other agencies, and associated policies; that a search of CBP records is unlikely to reveal responsive records; and if records are responsive, they likely are other agency records which would require referral to those

agencies for processing. *Id*. CBP identified the responsible agencies and suggested that Plaintiff request these records from these agencies. *Id*.

On October 2, 2023, Plaintiff declined CBP's scoping recommendation in whole. *Id*. ¶ 34. On November 2, CBP began the search for Plaintiff's second request without the benefit of any requested refinement. *Id*. ¶ 35. As anticipated, the search (which included an extensive electronic search) related to the unrefined request has yielded a large number of records, the overwhelming majority of which are likely unresponsive to this request and likely contain equities of agencies or components not parties to this litigation, which will require further consultation. *Id*. Of the very small sample reviewed so far, CBP estimates that only approximately 1% of the records are responsive. *Id*.

Specifically, the electronic search for the biometric data collection and data sharing programs has thus far yielded over 146,900 pages and 210 spreadsheets. *Id*. ¶ 36. Given the broad nature of the request, and limited information Plaintiff has provided about the documents it seeks, CBP is unable to meaningfully refine the search without further information from Plaintiff. *Id*. For example, even excluding collected extracts from media articles circulated daily, this would only remove less than 5,000 pages. *Id*. CBP is in the process of analyzing the results to prepare, once again, to seek additional information from Plaintiff to further refine the request. *Id*. CBP has and continues to process Plaintiff's two requests as quickly as is practicable in light of the resource constraints and inability to reach agreement with Plaintiff on refinement. *Id*. ¶ 37.

CBP submits that it cannot feasibly commit to "producing" a certain number of records per month, as the number of records processed depends on the breadth of the request and the amount of responsive and non-responsive records. *Id*. ¶ 40. If a Plaintiff, such as here, submits a very

broad request and declines to refine that request, if a search is conducted, there will be a greater likelihood of nonresponsive documents being pulled in that search. *Id.*

CBP submits that its normal processing rate for cases in litigation is to process between 250 and 500 pages a month. *Id.* ¶ 44. If the FOIA Division is ordered to process 500 pages a month, with accompanying indices, the strain will be immense. *Id.* It is anticipated that the FOIA Division will have to pull a large number of its staff members off of their current projects, which include processing and review of other litigation and administrative requests, as well as requests filed or orders issued prior to Plaintiff's requests, to aid in the processing of this litigation to meet this Court's order. *Id.* This will result in other FOIA requesters not receiving material related to their FOIA requests and potentially other litigation deadlines being missed. *Id.* Plaintiff has not provided any suggestion of any alleged imminent threats to life and safety or other urgent matters that might be jeopardized if the records requested by Plaintiffs are not released at a faster rate. *Id.* ¶ 45.

**I.  Standard for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *See* Fed. R. Civ. P. 12(c). If a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). *See Seber v. Unger*, 881 F.Supp. 323, 325 n. 2 (N.D.Ill.1995). "In fact, any distinction between them is merely semantic because the same standard applies to motions made under either subsection." 2 MOORE'S FEDERAL PRACTICE 3d § 12.38, 12–101; *see also GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995).

Under Rule 12(c), the court must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party. *See Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995). The court should grant a motion for judgment on the pleadings if the movant "is entitled to judgment as a matter of law." *See Burns Int'l Sec. Servs. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir.1995).

## II.   ARGUMENT

### A.   FOIA Does Not Require Production from Agencies Within 20 days

Plaintiff challenges the timeliness of the Agency's response on the grounds that FOIA requires agencies to issue a determination within 20 business days and produce responsive non-exempt records promptly thereafter. Pl.' Mot. at 21-3. However, the only consequence of an agency's failure to issue a determination within the 20-day statutory time-period, standing alone, is that the agency cannot rely on the administrative exhaustion requirement in the FOIA to keep a case from getting into court. *See N.Y. Times Co. v. Def. Health Agency,* Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *5 (D.D.C. Apr. 25, 2021) ("While agencies have 20 working days to 'make a determination with adequate specificity, such that any withholding can be appealed administratively,' . . . the consequence of agency delay in rendering such a determination bears only on the requester's ability to get into court," and, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court" (quoting *Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013))); see also *American Ctr. for Law and Justice v. Dep't of State*, 249 F. Supp. 3d 275, 283 (D.D.C. 2017) ("the sole penalty for mere procrastination is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court") (internal quotations omitted); *Long v. Dep't of Homeland Sec.*, 436

F. Supp. 2d 38, 43 (D.D.C. 2006) (department's failure to comply with the FOIA statutory deadlines "does not establish plaintiffs' right to expedited processing"). It is well accepted in this District that "no federal agency can meet the impossibly rigorous timetable set forth in the statute." *Nat'l Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 42 (D.D.C. 2002). Therefore, the remedy for missing the deadline is not to compel an agency to immediately release records.

### B. Constructive Exhaustion Does Not Require Immediate Production

Constructive exhaustion of administrative remedies is far short of an entitlement to immediate processing and production. A requester who files suit after the expiration of the twenty-day timeline is not entitled to "the imposition of another explicit timeline" for the production of records, but instead can file suit to have the Court "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Protect Democracy Project*, 263 F. Supp. 3d at 302 (quoting *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n,* 711 F.3d 180, 189 (D.C. Cir. 2013); *see also Daily Caller*, 152 F. Supp. 3d at 10 (same). That is the statutory remedy available to Plaintiff (Plaintiff exhausted its remedies), and it is the one Plaintiff has exercised by filing this lawsuit. Defendants are processing Plaintiff's FOIA requests as quickly as practicable, this Court's supervision of that process is now available. In light of Defendant's representations and without evidence to the contrary, Plaintiff's demand for an immediate fixed date to complete processing of the result has no basis in law. Rather, the parties should confer and attempt again to refine the search.

### C. Defendant's Processing is Reasonable Under the Circumstances

Exceptional circumstances exist when an agency confronts vast numbers of requests for information disclosure, at a level unanticipated by Congress, with insufficient resources to manage those requests. *Open America*, 547 F.2d at 616; s*ee also Appleton v. FDA*, 254 F. Supp. 2d 6, 8-9

(D.D.C. 2003). Congress understood that the number of courts' requests for records, as well as size and complexity of requests being processed, may be relevant to a determination of whether exceptional circumstances exist. *See* H.R. Rep. No. 104-795, pt. IV.B., at 18-19 (1996), 1996 USCAAN 3448, 3468; *Wilderness Soc'y v. U.S. Dep't of Interior*, No. 04-0650, 2005 U.S. Dist. LEXIS 20042, *21 (D.D.C. Sept. 12, 2005). This is compounded when a request goes to litigation.

Here, CBP receives a significant number of FOIA requests annually. *See* Howard Decl. ¶ 10. The agency is also a named defendant in approximately 60 FOIA cases in litigation, which encompasses at least 95 individual requests. *Id.* ¶ 12. Raw numbers of FOIA requests also fail to reflect size or complexity. For particularly complex requests, the language of a FOIA request may be unclear or extraordinarily broad, and the FOIA Division must first work with the requestor to refine the language of the request in order to effectively conduct a search. *Id.* ¶ 17. The more topics covered within a complex FOIA, the greater the likelihood multiple offices will need to be involved to gather and review responsive records. *Id.*

In this case, which is particularly complex, immediate release of records is not feasible or practicable. Plaintiff here has declined CBP's scoping recommendation in whole on a uniquely complex request. Howard Decl. ¶ 32, 34. Given the broad nature of the request, and limited information Plaintiff has provided about the documents it seeks, CBP is unable to meaningfully refine the search without further information from Plaintiff. *Id.* ¶ 36. CBP is in the process of analyzing the results to prepare, once again, to seek additional information from Plaintiff to further refine the request. *Id.* CBP also has and continues to process Plaintiff's two requests as quickly as is practicable in light of the resource constraints and inability to reach agreement with Plaintiff on refinement, as described above. *Id.* ¶ 37.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion for judgment on the pleadings.

Dated:  January 16, 2023
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:  _____/s/_____
     PATRICIA K. MCBRIDE
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     202-252-7123

*Attorneys for the United States of America*