IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL OTRO LADO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 22-1280 (CKK) |
| U.S. CUSTOMS AND BORDER PROTECTION | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Pursuant to Fed. R. Civ. P. 12(c), Plaintiff Al Otro Lado ("AOL") respectfully submits this Reply Memorandum in support of its Motion for Partial Judgment on the Pleadings. As discussed below, Defendant United States Customs and Border Protection ("CBP") violated the Freedom of Information Act ("FOIA") by failing to issue responsive determinations within the time required by FOIA. CBP then failed to show the exceptional circumstances and due diligence required to extend FOIA's deadlines. To remedy these violations, the Court can and should compel CBP to issue determinations for AOL's requests and begin production of records.

## BACKGROUND

On September 27, 2021, CBP received a FOIA request from AOL seeking records concerning CBP's role in interagency data collection and sharing programs called CBP One, Operation Double Helix, SmartLINK, Maritime Migrant Interdiction Operations, the Biometric Data Collection and Data Sharing Sharing Program, and the Biometric Identification Transnational Migration Alert Program ("Biometric Data Collection and Data Sharing request").

1

*See* Compl. ¶¶ 18-19, ECF No. 1; Ans. ¶¶ 18-19, ECF No. 10. On November 20, 2021, CBP received a FOIA request from AOL seeking records involving CBP's use of its humanitarian parole authority ("Humanitarian Parole Request"). *See* Compl. ¶¶ 20-21; Ans. ¶¶ 20-21. CBP admits that it has yet to issue determinations for either request. *See* Ans. ¶ 22.

On July 27, 2023, CBP sent AOL proposed modifications of its Humanitarian Parole Request. *See* Pls. Exhibit 1, Modification Emails at 1 ("Exh. 1"). The parties reached agreement to limit the scope of that request on August 21, 2023. Def.'s Response to Motion for Judgment on the Pleadings ("Resp.") at 2, ECF No. 23. On September 15, 2023, CBP sent AOL a series of nine modification requests as to the Biometric Data Collection and Data Sharing Request. *See* Exh. 1 at 4-6. The parties have not yet agreed as to modification of that request. Resp. at 2. However, AOL offered on October 2, 2023, to revisit modification once CBP has performed its searches so that the parties could "engage in an informed discussion about whether certain documents are outside the scope of the request." Exh. 1 at 7.

In CBP's response to the instant motion, CBP outlined its general difficulties with timely processing of FOIA requests, but detail how those difficulties have changed over time. *See* Resp. at 7. As to the processing of AOL's requests, CBP states that it "began" its searches responsive to the Humanitarian Parole and Biometric Data Collection and Data Sharing requests in August and November of 2023, respectively. *Id*. at 2-3. It does not claim to have completed its searches. Rather, CBP states only that its searches have "thus far yielded over 146,900 pages and 210 spreadsheets" potentially responsive to the Biometric Data Collection and Data Sharing request. *Id*. at 3. CBP provided no figures regarding its Humanitarian Parole search. In total, CBP admits

that it processed only "584 pages of documents and 8 lengthy spreadsheets" potentially responsive to AOL's requests. *Id*. at 2.

## STANDARD OF REVIEW

When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). As CBP presented a declaration outside of the pleadings in its response, the Court may treat the instant motion as a motion for summary judgment.

## ARGUMENT

### I. CBP Does Not Contest That it Has Failed to Issue Timely Determinations.

Nothing in CBP's Response justifies its ongoing failure to issue determinations within FOIA's deadlines. As CBP acknowledges, FOIA's default rule requires that agencies issue determinations within twenty days of receipt of a FOIA request. Resp. at 5. To properly issue a determination, an agency must "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*").

CBP makes no claim in its Response that it has reviewed documents, determined and communicated the scope of the documents it intends to produce and withhold, or informed AOL that it can appeal the adverse portion of the determination. Indeed, CBP admitted to its failure to issue determinations as to AOL's requests. *See* Ans. ¶ 22. On that basis alone, the Court may grant the instant motion.

## II. CBP Failed to Demonstrate the Exceptional Circumstances and Due Diligence Required to Extend FOIA's Deadlines.

The Court may extend an agency's determination deadline when the agency demonstrates that it faces exceptional circumstances and that it has exercised due diligence in light of those circumstances. 5 U.S.C. § 552(a)(6)(C)(i). However, CBP does not request any such extension. Instead, CBP argues only that its processing is "reasonable under the circumstances." Resp. at 6. In support of that argument, it offers only general statements that the agency faces burdens in processing a large backlog of FOIA requests and that AOL's requests are complex. These unsupported statements are not a sufficient basis for the Court to extend CBP's FOIA deadlines.

FOIA's plain language allows only two avenues by which agencies may obtain extra time to issue a determination. First, an agency may extend its determination deadline by ten business days if it demonstrates "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). Second, "if the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). The agency bears the burden of demonstrating that it warrants any extension of FOIA's determination deadlines. *See Hayden v. U.S. Dep't of Just.*, 413 F. Supp. 1285, 1287 (D.D.C. 1976).

### A. CBP Has Failed to Demonstrate Exceptional Circumstances.

Exceptional circumstances should not be conflated with "unusual circumstances." Unusual circumstances are "the need to collect the records from several separate places, voluminous records called for in the single request, and a need for consultation with other agencies." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 610 (D.C. Cir. 1976). However, the "'exceptional circumstances'" of subparagraph (C) are something

4

different." *Id*. An exceptional circumstances finding lies only when an agency demonstrates that it "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress" and that "the existing resources are inadequate to deal with the volume of requests." *Id*. In 1996, Congress amended FOIA to clarify that "delay that results from a predictable agency workload of requests" does not constitute exceptional circumstances "unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii); H.R. Rep. 104–795 at 24 (1996).

### 1. CBP Failed to Demonstrate An Unpredicted Increase in Workload.

An agency's showing that it "receives a high number of FOIA requests or has a large backlog of requests to which it must respond" is insufficient to establish exceptional circumstances. *Daily Caller News Found. v. Fed. Bureau of Investigation*, 387 F. Supp. 3d 112, 116 (D.D.C. 2019). Instead, the agency "must show that the number of requests received in the relevant period was truly unforeseen and remarkable." *Id.* This Court has found, for example, that a twenty percent annual increase in requests over a three year period "cannot be said to be unforeseen or remarkable." *Id*. at 118.

A court may consider the complexity of an agency's workload in determining whether exceptional circumstances exist. *Id*. at 119. However, the Court will not credit an agency's increasing complexity assertions when it presents "no evidence to support these claims other than anecdotal evidence." *Id*. Similarly, a court may consider an agency's FOIA litigation burdens in its analysis, but the fact that the agency "faces obligations in other litigations is not, in and of itself, sufficient to establish exceptional circumstances." *Elec. Frontier Found. v. Dep't of Just.*, 517 F. Supp. 2d 111, 118 (D.D.C. 2007). An agency may not rely on solely anecdotal

5

evidence of its FOIA litigation-related burdens. *See Elec. Priv. Info. Ctr. v. F.B.I.*, 933 F. Supp. 2d 42, 48 (D.D.C. 2013). Instead, the agency must demonstrate unforeseen increases in "litigation-related processing obligations over specific periods of time." *Id.*; *Daily Caller News Found.*, 387 F. Supp. 3d at 119.

Here, CBP offers only general complaints that it is dealing with a large backlog of FOIA cases. CBP claims that "CBP receives a significant number of FOIA requests annually," that it "is also a named defendant in approximately 60 FOIA cases in litigation, which encompasses at least 95 individual requests," and that "[r]aw numbers of FOIA requests also fail to reflect size or complexity." Resp. at 7. CBP does not provide the Court with any basis whatsoever to conclude that it is dealing with an unforeseen spike in requests, that those requests are meaningfully more complex than those it received in the past, or that litigation burdens have increased over time.

Even looking past CBP's waiver of those arguments, its declaration contains only one attempt to quantify an increase in workload. In that declaration, CBP claims that "the Agency received 86,278 in FY 2019; 80,457 in FY 2020; 108,181 in FY 2021; 132,177 in FY 2022; and 144,475 in FY 2023" Declaration of Patrick Howard ¶ 10, ECF No. 24. CBP also states that "CBP has received 40,500 requests in FY 2024" as of January 11, 2024" and that its fiscal year ("FY") ends on September 30. Thus, if CBP continues to receive FOIA requests at the same rate for the rest of FY 2024 as it has thus far, it will have then received a total of 143,519 requests for the year. Notably, CBP is on pace to receive **fewer** FOIA requests than it did in FY 2023. Using the figures above to calculate the annual change in CBP's requests received yields the following:

6

| Fiscal Year | Requests Received | Annual Change |
|---|---|---|
| 2019 | 86,278 | N/A |
| 2020 | 80,457 | -6.75% |
| 2021 | 108,181 | 34.46% |
| 2022 | 132,177 | 22.18% |
| 2023 | 144,475 | 9.30% |
| projected 2024 | 143,519 | -0.66% |

As shown above, CBP receipts have increased 14.8 percent annually between FY 2019 and FY 2023. Between FY 2019 and projected FY 2024, CBP's annual increase would amount to only 11.67 percent. *See Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 60 (D.D.C. 2018) (calculating percentage increases in FOIA requests using expected totals for the current fiscal year).CBP has received modest, predictable increases in requests far less dramatic than the 20 percent annual increases that this Court found unexceptional in *Daily Caller News Found.* 387 F. Supp. 3d at 116. As CBP failed to demonstrate unforeseen and remarkable increase in total, complex, and litigation related FOIA requests it received, it has not met its burden of proving that is has been deluged with excess requests.

2. **CBP Failed to Demonstrate Reasonable Progress in Reducing its Backlog.**

Where an agency can show no more than a "'predictable agency workload of requests,' exceptional circumstances will not lie 'unless the agency [further] demonstrates reasonable progress in reducing its backlog of pending requests.'" *Buc v. Food & Drug Admin.,* 762 F. Supp. 2d 62, 70 (D.D.C. 2011) (quoting 5 U.S.C. § 552(a)(6)(C)(ii)). Courts consider an agency's processing rate and whether the agency has actually reduced its backlog in determining if it has made reasonable progress. *Id*. at 71; *Daily Caller News Found.*, 387 F. Supp. 3d at 120.

Here, CBP has again failed to produce any data about the number of requests processed per year or whether its backlog has grown over time. Instead, it simply states without context, that "[a]lthough in Fiscal Year 2023, FOIA closed 89,728 cases, the office still had 102,308 pending requests at the end of the Fiscal Year." Howard Decl. ¶ 11. If CBP had included its publicly available statistics,[1] they would have shown that the following:

| Fiscal Year | Year Start Backlog | Requests Processed | Year End Backlog | Requests Processed Change | Backlog as a percentage of yearly processing |
|---|---|---|---|---|---|
| 2020 | 18,146 | 90,543 | 7,969 | N/A | 8.80% |
| 2021 | 7,969 | 90,576 | 25,686 | 0.04% | 28.36% |
| 2022 | 25,686 | 111,571 | 46,479 | 23.18% | 41.66% |
| 2023 | 46,479 | 89,728 | 102,308 | -19.58% | 114.02% |

Accordingly, CBP has made no improvements in its processing speed in the last four years and it actually processed less requests in FY 2023 than it did FY 2020. CBP's stagnation combined with a moderate increase in FOIA requests have caused CBP's backlog to increase both in absolute terms and as a percentage of processing. As a result, CBP has not made any reasonable progress in reducing its backlog.

---

[1] *See* DHS, *Fiscal Year 2022 Freedom of Information Act Report Submitted to the Attorney General of the United States and the Director of the Office of Government Information Services*, Feb. 2023, https://www.dhs.gov/sites/default/files/2023-03/DHS%20FY22%20FOIA%20Annual%20Report_508.pdf; DHS, Fiscal Year 2021 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services, Feb. 2022, https://www.dhs.gov/sites/default/files/2022-03/FY%2021%20DHS%20Annual%20FOIA%20Report.pdf; DHS, Fiscal Year 2020 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services, Mar. 2021, https://www.dhs.gov/sites/default/files/publications/dhs_fy2020_foia_report_cleared.pdf.

### 3. AOL's Deferral of CBP's Biometric Data Collection and Data Sharing Request is Not an Exceptional Circumstance

A court may consider "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request)... after being given an opportunity to do so by the agency to whom the person made the request... as a factor in determining whether exceptional circumstances exist." 5 U.S.C. § 552(a)(6)(C)(ii). When determining whether modification request is reasonable, a court may consider whether the agency provided "sufficient information to allow an informed decision that modification was appropriate." *Elec. Frontier Found.,* 517 F. Supp. 2d at 118. Where a requester's decision to decline modification "in and of itself, would not justify" a stay of FOIA's determination deadlines. *Id.*; *see also Elec. Priv. Info. Ctr. v. F.B.I.,* 933 F. Supp. 2d at 49.

Here, AOL agreed to modify the scope of its Humanitarian Parole request. Howard Decl. ¶ 30. As to the Biometric Data Collection and Data Sharing request, CBP sent AOL nine modification requests on September 15, 2023. *See* Exh. 1 at 4-6. Three of CBP's modification requests involved excluding all draft memoranda. *Id*. Another two request that AOL limit its requests to certain date ranges and to only email communications. *Id*. Five modification requests ask that AOL request the records from other agencies involved in the various relevant interagency programs. *Id*. CBP's last modification request sought elimination of AOL's request for records used to prepare a CBP privacy assessment. *Id*.

CBP's requests are not reasonable. First, as explained in AOL's October 2, 2023 response to CBP's requests, "agencies must segregate the factual portions of draft policies" rather than withhold them altogether. *Id.*; *see also Army Times Publ'g Co. v. Dep't of the Air Force,* 998 F.2d 1067, 1070 (D.C. Cir. 1993). Second, while CBP sought to limit the time frame of its search for

records related to its CBP One mobile application to dates after the application's public release, AOL wants records relating to the development of said application.[2]

Nor is CBP's suggestion that AOL file new requests with other agencies regarding interagency programs reasonable. First CBP, as a public participant in each of these programs, is likely to have responsive records.[3] In addition, DHS FOIA regulation allows CBP to "refer the responsibility for responding to the request or portion of the request to the component or agency best able to determine whether to disclose the relevant records, or to the agency that created or initially acquired the record as long as that agency is subject to the FOIA." 6 C.F.R. § 5.4(d)(3). Demanding that AOL file five new FOIA requests because of the possibility that CBP would have to refer some records to other agencies when AOL seeks CBP records in the first place is not reasonable. In fact, though CBP asserts that DHS Headquarters ("DHS HQ") is better positioned to respond to parts of AOL's request, DHS HQ transferred the whole of an identical request filed by AOL to CBP. *See* Pl's. Exhibit 2, DHS Headquarters Transfer Letter.

---

[2] AOL remains ready to limit the scope of its requests if CBP communicates that certain search terms or locations are yielding high percentages of unresponsive records.

[3] *See* United States Coast Guard, Annual Performance Report Fiscal Year 2018 at 24, Jun. 12, 2023, https://www.uscg.mil/Portals/0/documents/budget/FY%202018%20USCG%20APR%20Signed%206-12-19.pdf; DHS, Privacy Impact Assessment for the Alternatives to Detention (ATD) Program at 9, Mar. 17, 2023, https://www.dhs.gov/sites/default/files/2023-08/privacy-pia-ice062-atd-august2023.pdf; DHS ,Privacy Impact Assessment for the Operational Use of Familial DNA at 1, Sept. 10, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-cbp071-operationaluseoffamilialdna-september2021.pdf; DHS, Privacy Impact Assessment for the DHS International Biometric Information Sharing Program (IBIS) - Biometric Data Collection and Data Sharing  Sharing Partnerships (BDSP) DHS Reference No. DHS/ALL/PIA-095(a) at 4, Nov. 28, 2022, https://www.dhs.gov/sites/default/files/2022-11/privacy-pia-dhs095a-ibis-november2022.pdf#:~:text=Through%20this%20IBIS%20implementation%20model%2C%20referred%20to%20as,and%20improve%20their%20own%20domestic%20border%20security%20capabilities; DHS, HOMELAND SECURITY ADVISORY COUNCIL Final Report of the Biometrics Subcommittee at 29, Nov. 12, 2023, https://www.dhs.gov/sites/default/files/publications/final_hsac_biometrics_subcommittee_report_11-12-2020.pdf.

CBP also asked AOL to drop its request for records used in DHS' privacy assessment of the CBP One mobile application because it has posted some CBP One related records to its online FOIA reading room. However, the reading room records appear to only contain final privacy assessments and records unrelated to privacy assessments.[4] As such, CBP's requests, which would frustrate the very purpose for which AOL filed its request, are not reasonable.

Finally, AOL's offer to revisit potential modification of its requests once CBP searches for responsive records does not constitute a denial. On October 2, 2023, AOL responded to CBP's modification requests, stating that "[a]t this stage, without knowing exactly what responsive documents CBP intends to scope, our position is that the parties cannot engage in an informed discussion about whether certain documents are outside the scope of the request" Exh. 1 at 7. CBP's modification requests contained not much more than conjecture that conducting the searches would impose some burden on the agency.

Still, AOL offered that it was "happy to revisit this discussion once CBP has performed its searches." *Id*. at 7. In the over three months following that search, CBP has not communicated anything with AOL about the results of that search or AOL's offer to revisit modification. However, CBP now claims in its response that a November 2, 2023 Biometrics Data and Data Sharing request search yielded a large number of unresponsive records. Resp. at 3. CBP states that it "is in the process of analyzing the results to prepare, once again, to seek additional information from Plaintiff to further refine the request." *Id*. Though CBP has not sought AOL's assistance in refining the request for the past three months, AOL remains open to modification. As AOL agreed to modify its Humanitarian Parole request, CBP's Biometric Data and Data

---

[4] CBP, CBP One Mobile Application, last modified, Jan. 22, 2024, https://www.cbp.gov/document/foia-record/cbp-one-mobile-application.

11

Sharing modification requests were not reasonable, and CBP is responsible for any failure to modify the Biometric Data and Data Sharing, this factor does not cut in CBP's favor.

### 4. CBP Failed to Demonstrate that Existing Resources Are Insufficient.

An agency bears the burden of establishing that its "existing resources are inadequate" to timely process any increase in FOIA requests before a Court can find exceptional circumstances. *Buc.*, 762 F. Supp. 2d at 72. A showing of "staffing shortages and work overload" alone "may not render injunctive relief inappropriate." *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018). Instead, the agency must show that "staffing levels have dropped precipitously at the same time that the agency has faced an increased workload." *Gov't Accountability Project v. U.S. Dep't of Health & Hum. Servs.*, 568 F. Supp. 2d 55, 62 (D.D.C. 2008). Agencies may make such a showing by providing evidence that unprecedented and persistent staffing shortages and inability to hire staff have hamstrung its efforts to meet FOIA deadlines. *Buc.*, 762 F. Supp. 2d at 72.; *Elec. Frontier Found,* 517 F.Supp.2d at 115–16 (finding exceptional circumstances where the agency demonstrated that it was 115 positions under staffing level and a hiring freeze made future hiring unlikely).

Here, CBP claims that it "continues to process Plaintiff's two requests as quickly as is practicable in light of the resource constraints." Resp. 7. CBP's declaration then states that "the FOIA Division currently consists of merely thirty-two (32) full-time Government Information Specialists ("GIS"), six (6) FOIA assistants, one (1) student intern, five (5) supervisory branch chiefs, including myself, and one (1) director. The FOIA Division currently has 13 vacancies" Howard Decl. ¶ 7. However CBP does not provide any evidence explaining why it cannot meet FOIA deadlines with existing staff. It does not explain whether thirteen vacancies are

12

unprecedented, whether the number of vacancies have increased over time, or its prospects for filling those vacancies in the near future. As such, CBP has not demonstrated that existing resources are inadequate.

### B. CBP Has Failed to Demonstrate Due Diligence.

CBP has also failed to satisfy the "due diligence" prong. To prevail, an agency must demonstrate both that it "is exercising due diligence in processing FOIA requests, as a general matter," and in processing the plaintiff's requests in particular. *Gov't Accountability Project*, 568 F. Supp. 2d at 64. CBP has done neither here.

#### 1. CBP Failed to Demonstrate Due Diligence in Backlog Reduction.

In determining whether an agency exercised due diligence, a court considers whether it engaged in "serious efforts that result in a demonstrated reduction in the backlog of FOIA requests pending." *The Nat'l Sec. Archive Fund, Inc. v. U.S. Dep't of Air Force*, No. CIV.A. 05-571 RMC, 2006 WL 1030152, at *5 (D.D.C. Apr. 19, 2006). In its analysis, a courtc may consider agency efforts to implement technologies to increase processing speed, to aggressively recruit new employees, and to fill vacancies. *Id*.; *Elec. Frontier Found.,* 563 F. Supp. 2d at 195.

As discussed above, CBP has not made any progress in processing more requests or reducing its backlog. Moreover, CBP's Response contained no information about CBP's efforts to hire staff for its vacant positions, use technology to process requests more efficiently, or any other backlog reduction method. As such, it has not diligently sought to reduce its backlog.

#### 2. CBP Failed to Demonstrate Due Diligence In Processing AOL's Requests.

Courts also consider whether "the agency was exercising due diligence in responding to the request and **had been since the request was received**." *Oglesby v. Dep't of the Army,* 920

13

F.2d 57, 62 n.3 (D.C. Cir. 1990) (quoting H.R. Rep. No. 1380, at 11 (1974)) (emphasis added). This Court's holding in *Gov't Accountability Project* is instructive here. 568 F. Supp. 2d 55. In that case, the Court found that an agency's eight month delay in communicating a timeline for production of documents to the plaintiff and failure to seek a stay until after a plaintiff filed a motion for judgment on the pleadings "cannot be described as a model of due diligence." *Id*. at 64; *see also New York Times Co. v. Def. Health Agency*, No. 21-CV-566 (BAH), 2021 WL 1614817, at *7 (D.D.C. Apr. 25, 2021 (Finding due diligence where the agency "projected an anticipated completion date" and communicated that date with the plaintiff). Likewise, this Court has considered whether an agency has completed its search, worked with the plaintiff to eliminate false positives identified by its search, and diligently reviewed potentially responsive records on a monthly basis. *See Energy Future Coal. v. Off. of Mgmt.,* 200 F. Supp. 3d 154, 161–62 (D.D.C. 2016); *see also Elec. Frontier Found.,* 563 F. Supp. 2d at 195 (crediting the agency's diligence in processing 21,000 pages in roughly sixteen months).

CBP has made very little progress processing AOL's requests for two and a half years that they have remained pending. CBP received AOL's Humanitarian Parole request in November of 2021. Ans. ¶ 20. However, it did not request modification of that request until July of 2023. *See* Exh. 1 at 4. Likewise, CBP received AOL's Biometric Data Collection and Data Sharing request in September of 2021, but did not request modification until September of 2023. *Id*.; Ans. ¶18. CBP does not allege any other communication about the processing of AOL's requests. As such, CBP appears to have waited at least twenty-one months before it even began processing AOL's requests.

Even after the resolution of its modification requests, CBP has not processed AOL's requests with any urgency. Though the parties have agreed on modifications of AOL's Humanitarian Parole request since August of 2023, CBP claims only to have "began its search" subsequent to that agreement. Resp. at 2. CBP has not indicated the scope of the search results or whether that search is complete. As to the Biometric Data Collection and Data Sharing Request, CBP states that it began its search and that the search "thus far yielded" a large number of documents. *Id.*. at 3. Instead, CBP avers that its initial searches have yielded a large number of documents and spreadsheets and that it "is unable to meaningfully refine the search without further information from Plaintiff." *Id*. at 2-3. Notably absent in CBP's response, however, is any mention of the completeness of CBP's search, the information it needs to refine its search, or any attempt to refine search terms with AOL in the four months since the parties paused modification discussions. CBP further alleged that "the overwhelming majority" of records gathered "are likely unresponsive to this request and likely contain equities of agencies or components not parties to this litigation." *Id*. at 3. However, CBP did not discuss whether it encountered any such records or referred any of them to other agencies.

Nor has CBP diligently processed the records. By its own count, CBP processed only 584 pages of documents and eight spreadsheets as of January of 2024. *Id*. at 2. This pace works out to a paltry twenty-one pages processed per month since the filing of AOL's first request, far slower than the 500 and 1,313 page per month pace the Court found diligent in *Energy Future Coal. v. Off. of Mgmt* and *Elec. Frontier Found,* respectively. CBP's response to the instant motion did not explain why it could not process AOL's requests any faster.[5]

---

[5] Though it characterizes AOL's requests as complex, CBP does not cite any case law supporting the proposition that its should be allowed to process complex requests slowly. An agency's need "to collect

Finally, CBP failed to request a stay of proceedings pursuant to 5 U.S.C. § 552(a)(6)(C) in its Response. In fact, CBP submitted to the Court in every joint status report in this case that it "does not believe that a motion for an Open America stay is likely at this time." *See* ECF No. 14 ¶ 5; ECF No. 15 ¶ 6; ECF No. 16 ¶ 6; ECF No. 17 ¶ 6; ECF No. 19 ¶ 9; ECF No. 21 ¶ 6; ECF No. 20 ¶ 8. The Court should not deny Plaintiff's motion and effectively stay the case here without CBP having even requested such a stay. Because CBP sat on AOL's requests for at least twenty-one months, failed to complete its searches in the subsequent six months, and never asked for a stay of proceedings, it has not exercised due diligence in processing AOL's requests.

### III. AOL Requests Close Judicial Supervision Over CBP Processing of its Requests, Not Immediate Production of Records.

CBP argues that FOIA the penalty for failure to issue determinations within twenty days is waiver of administrative exhaustion requirements and judicial supervision over agency processing of the requests. Resp. at 5-6. That is correct. However, CBP's argument that waiver of exhaustion requirements and a plaintiff's access to the courts is the "only consequence" of such failures. *Id*. at 5. AOL has not requested that CBP immediately produce all responsive records. Rather, AOL requests that the Court order that CBP finally issue determinations responsive to AOL's now twenty-six and twenty-eight month old requests and the Court supervise over CBP's processing in the form of a production order.

CBP essentially asks the Court to countenance a system in which requesters can access the courts, but those same courts are powerless to compel agency action. As Congress intended

---

the records from several separate places, voluminous records called for in the single request, and a need for consultation with other agencies" are factors to be considered in whether an agency make invoke a ten day extension for "unusual circumstances," not whether it warrants a longer extension. *Open Am.*, 547 F.2d at 610.

16

that "agencies be required to respond to inquiries and administrative appeals within specific time limits" it could not have intended such a scheme. H.R. Rep. No. 93-876 (1974). As the Court of Appeals found, "the statute does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight."*CREW*, 711 F.3d at 190.

The very purpose of FOIA's deadlines are to "allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents." *Oglesby*, 920 F.2d at 64. Upon a finding of violation of those deadlines the "court may then order the agency to respond to the request." *Id.*; *see also Jud. Watch, Inc.*, 895 F.3d at 783 (Describing a production order as an "ordinary" remedy.).

The cases cited by CBP do not support its argument that courts may not order production in response to agency failures to meet FOIA deadlines. In *New York Times Co.* and *CREW*, both courts discuss a judicial responsibility to supervise agency processing of delinquent requests. 2021 WL 1614817, at *5; 711 F.3d at 189. *Long v. Dep't of Homeland Sec.* addresses the issue even more directly. 436 F. Supp. 2d 38. (D.D.C. 2006). In that case, this Court found that

> If the agency fails to comply with the statutory time requirements… the person or entity making the request may file suit in federal court before exhausting administrative remedies… The court then may either order the production of any agency records improperly withheld or, upon a finding of "exceptional circumstances" and "due diligence" by the agency, retain jurisdiction and allow the agency additional time to complete its review of the requested records.

*Id.* at 43 (citations omitted). This Court has also routinely ordered production schedules when they find that agencies failed to issue timely determinations. *See e.g. Daily Caller News Found.,* 387 F. Supp. 3d at 121; *Gov't Accountability Project,*, 568 F. Supp. 2d at 64. In *Buc,* for example, the Court ordered the agency to "promptly produce any

17

responsive documents on a rolling basis" and "complete its production" by a date certain. 762 F. Supp. 2d at 73.

Even in cases in which the court grants a stay, "the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *CREW,* 711 F.3d at 189. For example, in *Energy Future Coal.*, this Court granted the agency's stay request, but required continued processing of 500 pages per month and reporting concerning the agency's efforts to process records at a faster rate. 200 F. Supp. 3d at 163.

Finally, CBP argues that a production order in this case "will result in other FOIA requesters not receiving material related to their FOIA requests and potentially other litigation deadlines being missed." Resp. at 4. However, the Court of Appeals has previously found that an agency's argument that production orders serve in "'distort[ing] the statutory scheme' and resulting in harm to 'other members of the public who have an equal right to seek information from the government,' is not well-taken." *Jud. Watch, Inc.,* 895 F.3d at 784 (citation omitted).

In any case, as discussed above, this Court regularly requires agencies to abide by production schedules.[6] None of those decisions even consider the impact of such a schedule on the public at large. *See e.g. Daily Caller News Found.,* 387 F. Supp. 3d at 121; *Gov't Accountability Project,*, 568 F. Supp. 2d at 64; *Buc,* 762 F. Supp. 2d at 73. This is for good reason. If CBP were allowed to evade responsibility for failing to comply with FOIA deadlines

---

[6] CBP expresses concerns over processing even 500 pages per month but this Court has ordered production of thousands of pages per month without issue. *See e.g. Jud. Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002) (4,500 and 3,000 pages per month); *Natural Resources Defense Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43-44 (D.D.C. 2002)(7,500 pages in forty-five days).

by simply pointing out that compliance would delay processing of other requests, no requester could ever obtain any judicial redress for such a failure. Congress did not intend such a result.

## CONCLUSION

CBP violated FOIA by failing to issue timely determinations responsive to AOL's requests. Because CBP did not demonstrate that it faces an unprecedented deluge of requests, that it has made reasonable progress towards reducing backlogs, or that its existing resources are inadequate, it has not established the exceptional circumstances necessary for an extension of FOIA's determination deadlines. As CBP has failed to demonstrate that it acted diligently to reduce its backlogs or to process AOL's requests, it also failed to establish due diligence. This Court regularly orders agencies to complete its searches and to abide by production schedules when the agency fails to meet FOIA's determination deadlines. AOL respectfully requests that the Court do the same here.

Dated: January 26, 2024               Respectfully submitted,

        /s/  Jeremy Jong
Jeremy Jong (NJ Bar No. 066472014)*
AL OTRO LADO
P.O. Box 907
Maywood, CA 90270
Telephone: (323) 205-6420
Facsimile:  (323) 430-8793
jeremy@alotrolado.org

Sejal Zota (NC Bar No. 36535)
Just Futures Law
95 Washington Street, Suite 104-149
Canton, MA 02021
Telephone: (919) 698-5015
sejal@justfutureslaw.org

Attorneys for Plaintiff

* admitted *pro hac vice*