UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL OTRO LADO,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>    Defendant. | Civil Action No. 22-1280 (CKK) |

**<u>DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE ITS STATUS REPORT</u>**

Pursuant to the Federal Rules of Civil Procedure ("Rule") 6(b)(1)(b) and to the Court's Minute Order dated July 17, 2024, Defendant, the U.S. Customs and Border Protection ("CBP" or "Defendant"), by and through its respective undersigned counsel, respectfully moves for leave to submit this Status Report to apprise the Court of the status of this Freedom of Information Act ("FOIA") case:

1.  Defendant's status report was due on August 20, 2024. Undersigned counsel had completed the report and was ready to timely file it on August 20, 2024, however, she is suffering from COVID 19 and began to feel fatigued prior to filing the report. As a result, she stopped working and inadvertently failed to file the document. Upon conferring with agency counsel, undersigned counsel realized her error. Undersigned counsel sincerely apologizes to the Court and Plaintiff. Counsel conferred with Plaintiff's counsel and there is no opposition to this request.

2.  It is within the Court's discretion to determine whether attorney error may constitute excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*. 507 U.S. 380 (1993). The Supreme Court has set forth a four-factor test to determine whether excusable neglect exists, namely: (1) danger of prejudice to opposing party; (2) length of delay and potential

impact on judicial proceedings; (3) the reason for delay; and (4) whether the movant acted in good faith. *Id*. at 395. *See also In re Vitamins Antitrust Class Actions*, 327 F.3d 1207 (D.C. Cir 2003); *Yesudian v. Howard University*, 270 F.3d 969 (D.C. Cir. 2001). Here, the report will aid the Court in determining the processing of records in the matter; there is little, if any, prejudice to Plaintiff and the the length of delay is minimal. Further, the failure to file was inadvertent and there is no evidence of bad faith.

3. At issue in this case are two separate FOIA requests submitted by Al Otro Lado ("Plaintiff"), CBP-2021-109650 and CBP-2022-013430, to U.S. Customs and Border Protection ("CBP"). Plaintiff's request assigned internal tracking number CBP 2021-109650 seeks certain records regarding biometric data collection and data sharing programs. Plaintiff's request assigned internal tracking number CBP-2022-013430 seeks certain records regarding the use of humanitarian parole by CBP.

4. CBP reports that for the humanitarian parole request (CBP-2022-013430), CBP has completed processing records and issued its final production on February 12, 2024.

5. CBP reports that for the biometric data collection and data sharing programs request (CBP-2021-109650), CBP has now completed the search, having identified the universe of documents which may be responsive, and is processing such records.

6. As background, on September 15, 2023, CBP proposed scoping language to narrow the biometric data request to items that would more effectively target records responsive to Plaintiff's stated area of interest. This would also increase CBP's processing efficiency by reducing the number of non-responsive documents that the agency would need to process. On September 19, 2023, Plaintiff asked whether CBP had yet performed any searches responsive to the request. CBP received Plaintiff's question on September 26, and responded in the negative,

which Plaintiff received on September 29. On October 2, Plaintiff responded that it was not inclined to agree with any of the scoping requests, but that it would revisit CBP's scoping recommendations once CBP has performed its searches. On November 2, CBP began the search based on the un-scoped request. As indicated in the Declaration of Patrick Howard submitted with Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings, the search yielded over 146,900 pages and 210 spreadsheets (which tend to be lengthy) of potentially responsive documents. *See* Declaration of Patrick Howard ¶ 36.

   7. CBP maintained that the request was significantly overly broad and seeks records regarding programs and policies operated by other agencies. As such, on March 2, 2024, CBP made a new series of scoping recommendations to Al Otro Lado with respect to Al Otro Lado's biometric data collection and data sharing programs request. Al Otro Lado partially agreed to CBP's recommendation on March 27, 2024, and agreed to review future CBP scoping requests once CBP produced samples of a certain type of documents it sought to scope out. These documents, titled the DHS Morning Brief and the Homeland Security News Briefing, consist of daily compilations of publicly available news articles and clippings that are circulated within the agency. CBP asserted that, while arguably responsive, Plaintiff likely had no interest in such documents and processing would therefore be an unnecessary burden for CBP. CBP provided Al Otro Lado with those samples on April 20, 2024. On May 16, 2024, Al Otro Lado agreed to CBP's scoping recommendation in full.

   8. CBP issued its first interim response to request CBP-2021-109650 on March 18, 2024. For that production, CBP processed 219 pages of documents and three audio-video files. CBP produced 145 pages of responsive records in full or in part with redactions. CBP also determined that 74 pages and the three audio-video files were non-responsive or duplicative.

9. CBP issued its second interim response on April 18, 2024. For that production, CBP processed 813 pages of records. CBP produced 582 pages of responsive records in full or in part with redactions and withheld 14 pages in full.

10. CBP issued its third interim response on May 20, 2024. For that production, CBP processed 334 pages of documents and one spreadsheet. CBP produced 109 pages of responsive records in full or in part with redactions. CBP determined that 190 pages and the spreadsheet were duplicative or not responsive.

11. CBP issued its fourth interim response on June 18, 2024. For that production, CBP processed 304 pages of documents and 3 spreadsheets. CBP produced 147 pages of responsive records in full or in part with redactions. CBP determined that 157 pages and the three spreadsheets were duplicative or not responsive to the request.

12. CBP issued its fifth interim response on July 18, 2024. For that production, CBP processed 1,098 pages of documents. CBP produced 131 pages of responsive records in full or in part with redactions. CBP determined that 967 pages were duplicative or not responsive to the request.

13. CBP issued its sixth interim response on August 19, 2024. For that production, CBP processed 6,207 pages of documents. CBP produced 201 pages of responsive records in full or in part with redactions. CBP determined that 5,944 pages were duplicative or not responsive to the request.

14. In addition, CBP has sent out 314 pages of responsive records to other government agencies for consultation. Among those, 215 pages have returned from consult and produced, and 99 pages remain outstanding.

15. CBP expects to make its seventh interim response in September.

16. CBP estimates that there are approximately 129,331 pages and 206 spreadsheets of records left to process for the biometrics request. These consist of electronic discovery ("eD") searches using key words identified in items 3, 7, 10, 12, 15, 18, and 21 of Plaintiff's request for communications sent or received by the CBP Commissioner, Acting CBP Commissioner, or DHS Secretary (in the case of item 12), as well as communications on which any of those officials were cc'd, or bcc'd on, for a number of programs. The remaining records also include records potentially responsive to an electronic search for records for item 4 of Plaintiff's request for all records relied upon or used to prepare DHS/CBP/PIA-068 CBP One™ Mobile Application. CBP estimates that it will take approximately three years before it finishes processing the biometrics request. This estimate is based on an approximate 40,000 pages per year processing rate for the assigned FOIA Government Information Specialist ("GIS") across all the processor's assigned litigations. The number of pages processed in a particular month typically varies depending on the size of the documents and spreadsheets, which are pulled for processing in the order in which they appeared in the electronic search. Moreover, consistent with the records it has processed to date, CBP anticipates that many of these records will be duplicative or nonresponsive, and many will also need to be sent to other agencies for consultation.

17. This case is currently one of 20 FOIA-related litigation cases, at various stages of processing completeness, that the assigned GIS is handling in addition to her other FOIA-related and information sharing duties and responsibilities. Among her 20 total assigned litigation cases, 6 have active court-ordered processing schedules and 2, including this case, have regular monthly or near monthly productions. The rest are cases that have either completed production or are pending completion of searches before production may begin.

18. The exact location of Plaintiff's request in the processing queue will vary depending on the demands of the GIS's requests in litigation in a particular month. Meeting processing and production deadlines does not depend on a 'linear' or 'first-in-first-out' approach for the cases in litigation, but rather, requires balancing of time and resources based on, the demands of the requests in litigation with existing production schedules (especially to ensure compliance with any court orders), the quantity and complexity of records among those requests, the proximity of upcoming deadlines, and other non-FOIA related duties and responsibilities, among other things.  Once the GIS is able to turn her attention to this particular request, the number of pages processed—and then ultimately produced—in a particular month will vary depending on the next set of documents and spreadsheets pulled in the search. A document can contain 10 pages or it can contain 1,000 pages. Then that document could be quickly identified as nonresponsive or duplicative or require more extensive review to determine responsiveness. The same applies when determining whether to send a document for consultation. The document could be quickly redacted or require many hours in order to prepare for production. These are just some of the factors that determine how many pages the GIS can process and produce in a particular month for this litigation, and the same complexities apply for all other requests in litigation.  For these reasons, the precise location of Plaintiff's FOIA request in the 'processing queue' will vary significantly from month to month.

19. CBP intends to file a joint status report with Plaintiff by October 25, 2024, updating the Court on the status of CBP's search and processing of records in this case.

Dated: August 21, 2024
Washington, D.C.

    Respectfully submitted,
MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:   /s/ Patricia K. McBride
    PATRICIA K. MCBRIDE
    Assistant United States Attorney
    U.S. Attorney's Office, Civil Division
    601 D Street NW
    Washington, DC 20530
    (202) 252-7123
    patricia.mcbride@usdoj.gov

*Attorneys for the United States of America*